**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01210-RM-NYW

MY24HOURNEWS.COM, INC.,

    Plaintiff,

v.

AT&T CORPORATION,

    Defendant.

---

## ORDER

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on Defendant AT&T Corp.'s ("AT&T" or "Defendant") Motion to Stay Proceedings ("Motion to Stay") [#21, filed July 31, 2015] and Plaintiff My24HourNews.com, Inc.'s ("My24" or "Plaintiff") Motion to Conduct Limited Jurisdictional Discovery ("Motion for Limited Discovery") [#49, filed September 17, 2015].

Also before the court, but not subject to this Order, is AT&T's Motion to Dismiss Plaintiff's First Amended Complaint Based on Lack of Personal Jurisdiction ("Motion to Dismiss") [#46, filed September 15, 2015]. These Motions were referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated June 17, 2015 [#8], and memoranda dated September 16, 2015 [#47], September 18, 2015 [#50], and October 13, 2015 [#56]. For the reasons stated below, the Motion to Stay is GRANTED IN PART and DENIED IN PART and the Motion for Limited Discovery is GRANTED.

## BACKGROUND

Plaintiff initiated this action on June 9, 2015 by filing a Complaint asserting claims for Breach of Joint Venture Agreement, Breach of Fiduciary Duty, Promissory Estoppel, Fraudulent Misrepresentation/Inducement, Fraudulent Concealment/Inducement, Breach of Contract, Idea Misappropriation, Theft of Trade Secrets, Unjust Enrichment, Conversion, Negligent Misrepresentation, and for Preliminary and Permanent Injunctive relief arising out of an agreement between My24 and AT&T with regard to a backend digital platform ("Broadcast Platform") designed by My24, to be built by AT&T [#1].  On July 31, 2015, Plaintiff filed a First Amended Complaint adding AT&T, Inc. as a Defendant. [#23].[1]

My24 is a digital technology company that produces live digital video news content made accessible through mediums such as the Broadcast Platform, Smartphones and Tablets, and the Internet. [#23 at ¶ 5]. My24 is a Colorado corporation with its principal place of business in Colorado. *Id.* AT&T is a telecommunications provider and a New York corporation with its principal place of business in New Jersey. [#23 at ¶ 6]. Plaintiff pleads that AT&T is authorized to conduct business in Colorado as a telecommunications provider and does in fact conduct business in Colorado as such. *Id.*

On July 31, 2015, AT&T filed the Motion to Stay along with a request that the August 21, 2015 Scheduling Conference be vacated. [#21].  This court vacated the Scheduling Conference and reset it for October 16, 2015. [#33]. AT&T subsequently filed the Motion to

---

[1] On August 21, 2015, Plaintiff submitted a Notice of Voluntary Dismissal as to AT&T, Inc. [#35].

Dismiss on September 15, 2015 [#46].[2] Two days later, Plaintiff filed the Motion for Limited Discovery [#48, #49]. Defendant filed a Response to the Motion for Limited Discovery on October 1, 2015 [#52], and Plaintiff filed a Reply on October 8, 2015 [#55]. This court presided over a hearing on the Motion for Limited Discovery on October 16, 2015, at which time the undersigned took the matter under advisement. [#60]

## STANDARD OF REVIEW

My24 bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In the Tenth Circuit, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling–Temco–Vought, Inc.,* 511 F.2d 1033, 1035 (10th Cir. 1975)). Whether to allow jurisdictional discovery is within "the broad discretion" of the trial court. *Id.* The court abuses its discretion if the denial of limited discovery results in prejudice to a litigant. *Sizova v. Nat'l Inst. of Stds. & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted…or where a more satisfactory showing of the facts is necessary.'" *Sizova*, 282 F.3d at 1326 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir. 1977)). "To obtain jurisdictional discovery, a plaintiff must 'present a sufficient factual predicate for the establishment of personal jurisdiction.'" *Gordon Howard Assocs. v. Lunareye, Inc.*, No. 13–cv–01829–CMA–MJW, 2013 WL 5637678, at *4 (D. Colo. October 15, 2013) (citing *St. Paul*

---

[2] Plaintiff thereafter sought and was granted an extension to file a Response to the Motion to Dismiss until after the resolution of the Motion for Limited Discovery. [#48, #53].

*Travelers Cas. & Sur. Co. of America v. Guaranty Bank & Trust Co.,* 2006 WL 1897173, at *4 (D. Colo. 2006)). Jurisdictional discovery is not appropriate where there is only a "low probability" that additional discovery would lead to facts sufficient to support a finding of personal jurisdiction over the defendant. *See Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004).

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." To obtain personal jurisdiction over a non-resident Defendant in a diversity action, my24 must establish that jurisdiction is legitimate under the laws of the forum state and comports with the Due Process clause of the Fourteenth Amendment. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). The Colorado Supreme Court has construed Colorado's long-arm statute as conferring the maximum jurisdiction permissible consistent with the Due Process clause, rendering the inquiry as to whether the exercise of personal jurisdiction over the defendant comports with constitutional due process demands. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "[T]o exercise jurisdiction in harmony with due process, [the defendant] must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.' " *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A forum may possess either "general jurisdiction" or "specific jurisdiction" over a defendant.

The exercise of general personal jurisdiction comports with due process where the corporation's "affiliations with the State are so continuous and systematic as to render it

essentially at home in the forum State." *Daimler v. Bauman*, 134 S.Ct. 746, 760 (2014). The defendant's place of incorporation and the principal place of business are "paradig[m]...bases for general jurisdiction" because "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011)). Prior to *Daimler*, the Tenth Circuit considered the following four factors in determining whether general jurisdiction exists: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Grynberg*, 666 F. Supp. 2d at 1230 (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 457 (10th Cir. 1996)). These factors remain instructive post-*Daimler*, *see Archangel Diamond Corporation Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1366 (D. Colo. 2014), within the context that "[g]eneral jurisdiction in a forum other than the defendant's place of incorporation or principal place of business will exist only in 'exceptional case[s]' where the defendant's operations in the forum are 'so substantial and of such a nature as to render the corporation at home in that State.'" *Tomelleri v. MEDL Mobile Inc.*, No. 2:14–CV–02113–JAR, 2015 WL 1957801, at *4 (D. Kan. April 29, 2015) (quoting *Daimler*, 134 S.Ct. at 761 n.19). *See also Fabara v. GoFit, LLC*, 308 F.R.D. 380, 402 (D.N.M. 2015).

Specific jurisdiction "encompasses cases in which the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 134 S.Ct. at 749 (quoting *Helicopteros*

5

*Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.8 (1983)). To determine whether the exercise of specific personal jurisdiction comports with due process, the court asks "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher,* 722 F.3d 1257, 1264 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1070). My24 contends factual disputes exist regarding both general jurisdiction and specific jurisdiction of AT&T in Colorado, and attached almost four hundred pages of exhibits in support of its contention. [*See* #49-1 through #49-20].

**I.      General Jurisdiction**

My24 asserts that general jurisdiction can be found as a result of, including but not limited to, the following facts. Prior to 2012, AT&T's substantial long distance business in Colorado was provided by AT&T Communications of the Mountain States ("AT&T Mountain States"), a wholly owned subsidiary of AT&T. AT&T Mountain States' corporate headquarters and principal place of business was located in Colorado. [#49 at 6]. In 2012, AT&T Mountain States was merged into AT&T. The Arizona Public Service Commission approved the merger and found that AT&T Mountain States was a Colorado corporation and a wholly-owned subsidiary of AT&T. *Id.* AT&T subsequently assumed control of the substantial local exchange and long distance business of AT&T Mountain States, a Colorado corporation with its principal place of business in Colorado. [#49 at 7]. The Colorado Public Utilities Commission ("CPUC") granted AT&T a Certificate of Public Convenience and Necessity ("CPCN") authorizing it to provide long distance service and local exchange services to customers throughout Colorado. *Id.*

Pursuant to CPUC Rule 4 CCR 723-2-2103(A)(VI), AT&T designated a Colorado agent for service of process. *Id.* AT&T filed with the CPUC its local exchange services tariff, Colorado PUC No. 9 ("Tariff"), setting forth its rates and services. [*See* #23-2]. My24 asserts that the Tariff constitutes a contract with each of AT&T's subscribers. [#49 at 8]. AT&T regularly intervenes as a matter of right in CPUC proceedings. [#49 at 9-11; #23-8, #23-9, #23-11]. AT&T intervenes in CPUC proceedings, participates in rulemaking proceedings before the CPUC, and sues companies in Colorado in connection with its telecommunications facilities here. Erik Underwood, the founder and chief executive officer of My24, attests that AT&T owns the office building located at 2525/2535 E. 40th Avenue, Denver, valued at $11,154,700, pays substantial property taxes, and has received a property tax exemption with respect to a portion of this property. [#49-1 at ¶ 101; #49-5 at 15-16]. An "AT&T Colorado News" website posting indicates the following: its employees mentored 307 students in Colorado through Aspire Mentoring Academy from September 2012 to December 31, 2014; it employed approximately 1,000 employees in Colorado as of the third quarter of 2014; it spent approximately $650 million on goods and services purchased from suppliers based in Colorado in 2014; and more than $86 million was generated in local and state taxes by AT&T operations in Colorado in 2014. [#49 at 12; #49-1 at ¶ 102; #49-5 at 17].

Based on the foregoing, My24 seeks the following jurisdictional discovery in connection with general jurisdiction:

1. Docket numbers and subject matters of AT&T PUC filings;
2. The cases numbers and subject matters of AT&T's litigation in Colorado federal and state Courts;

7

3. The number of AT&T's Colorado customers by category of service, *e.g.*, local and long distance, and revenues generated therefrom;

4. AT&T's real and personal property located in Colorado;

5. AT&T's lobbying activities in Colorado;

6. Documents showing that AT&T's merger with AT&T Mountain States was seamless and transparent as represented by AT&T; and

7. AT&T's advertising and corporate sponsorships in Colorado. [#49 at 17; Ex. #49-10].

AT&T argues that these topics are not relevant to determining whether it is "at home" in Colorado for purposes of general jurisdiction. In its Motion to Dismiss, AT&T confirms that New York is its place of incorporation and its headquarters is Bedminster, New Jersey. [#46 at 4]. Defendant represents that its contacts in Colorado consist of "owning an office in Denver and providing competitive local exchange service and long distance services to local business and branch customers." [Declaration of James F. Dionne, #46-1 at ¶ 7]. Mr. Dionne, an AT&T Assistant Vice President, attests that Defendant "routinely participates in regulatory proceedings before state public utility commissions in each of the 49 states in which it provides competitive local exchange services"; and AT&T's participation in regulatory proceedings and entry into interconnection agreements in Colorado "are activities which are no different than or unique from those in which AT&T Corp. participates as a matter of course in virtually every state across the country." [#46-1 at ¶ 10]. AT&T contends that none of its "Colorado contacts are different from its connections to any of the other 49 states in which AT&T Corp. does business, and as such, cannot serve as the basis for the exercise of all-purpose, 'general' jurisdiction over AT&T Corp. in Colorado." [#52 at 2].

At oral argument, both Parties addressed the issue of whether AT&T Mountain States' contacts with the state of Colorado could be imputed to Defendant, essentially by operation of law due to the merger of AT&T Mountain States with Defendant.

## II.     Specific Jurisdiction

My24 also asserts it is entitled to conduct limited jurisdictional discovery on the question of specific jurisdiction arising out of the Broadcast Platform.  Specifically, My24 contends that AT&T was to be the exclusive provider and have co-branding and co-marketing rights of the Broadcast Platform and would in turn fund My24's launch of the Platform during a Presidential Town Hall Meeting or a debate between President Obama and Governor Romney during the 2012 Presidential election.  [#49 at 18; #49-1 at ¶¶ 26-41; Declaration of Todd Olsen ("Olsen Decl.") #49-15 at ¶¶ 19-29; Declaration of Hon. Thelma Wyatt Moore (retired) #49-11 at ¶¶ 6-17].  After My24's studio facilities suffered structural damages, AT&T and My24 agreed to relocate the studio facilities to the Hurt Building in Atlanta, Georgia.  Pending funding and additional construction to the studio in the Hurt Building, AT&T and My24 agreed to temporarily move My24's main broadcast operations to Denver, Colorado.  AT&T and My24 agreed that after completion of the build-out of the Atlanta broadcast studio, the Denver studio would serve as an off-hour and back-up facility.  Following the relocation of the operation to Denver, AT&T refused to fund My24's launch and to sponsor the event.  [#49-15 at ¶¶ 39-54; #49-1 at ¶¶ 81-99].

Based on the foregoing, My24 seeks the following jurisdictional discovery in connection with specific jurisdiction:

   1.  AT&T internal communication pertaining to AT&T's relocation to Denver;

2. AT&T internal communication pertaining to My24's relocation to the Hurt Building;

3. AT&T documents showing that Mr. Olson was acting as AT&T's ostensible agent; and

4. AT&T internal communication pertaining to My24's business in Colorado, including broadcasting a Presidential interview through its studio in Colorado. [#49 at 20; #49-20].

AT&T argues that these topics are not relevant to determining whether its "conduct and/or contacts in Colorado give rise to My24's claims" necessary to assert specific jurisdiction. [#52 at 2]. Defendant asserts that none of its Colorado employees worked on any of the equipment or services purchased by My24, and none of the oral or written contracts identified in the Amended Complaint were negotiated, executed or specified performance in Colorado. [#52 at 14]. [Declaration of Barbara Pepe #46-2 at ¶¶ 3, 8, 10]. Additionally, the agreement between the Parties regarding the Broadcast Platform was reached in Atlanta. AT&T also argues that the Amended Complaint acknowledges that My24 moved to Denver on its own initiative. [#52 at 14]. However, these allegations are ambiguous as to Ms. Pepe's role in the move between studios [*see* #23 at ¶ 124]; and AT&T's arguments generally underscore, rather than refute, the presence of factual questions with regard to whether specific jurisdiction lies here.

Without passing on the merits of the pending Motion to Dismiss, I find that My24 has met its burden of demonstrating that "a more satisfactory showing of the facts is necessary." *Sizova*, 282 F.3d at 1326. In doing so, I note that the case law directs that jurisdictional discovery is generally permitted unless there is a very low possibility that the discovery will affect the court's jurisdictional analysis. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (citation omitted). At oral argument, Defendant contended that Plaintiff's contacts with Colorado alone could not be used to support specific personal jurisdiction, and

Plaintiff asserted that AT&T's actions with respect to the "joint venture" between the two parties demonstrated that AT&T had availed itself of this forum's jurisdiction. The court is persuaded that Plaintiff's arguments regarding specific jurisdiction are, in part, based on the actions of Defendant that Plaintiff may not be privy to without discovery; and therefore, I permit some limited jurisdictional discovery that is reasonably tailored to address the narrow question of personal jurisdiction. *Cf. Grynberg*, 460 F. App'x at 104 (affirming magistrate judge's denial of motion to conduct jurisdictional discovery on the basis the requested discovery was "largely irrelevant to the jurisdictional issues…before the court."). The court will not specify how Plaintiff should use its allowance of discovery requests as outlined below, but advises Plaintiff that it will not entertain any requests to expand the amount of discovery.

Accordingly, IT IS ORDERED:

1. The Motion to Stay Proceedings [#21] is **GRANTED IN PART** and **DENIED IN PART**;

2. The Motion to Conduct Limited Jurisdictional Discovery [#49] is **GRANTED**;

3. No later than **October 30, 2015**, Plaintiff may propound up to five interrogatories, five requests for production, and five requests for admission directed at issues related to personal jurisdiction as identified in Plaintiff's briefing. No depositions are permitted;

4. No later than **November 20, 2015**, Defendant will respond to the jurisdictional discovery;

5. No later than **December 4, 2015,** Plaintiff will respond to the pending Motion to Dismiss;

6. Any reply by Defendant will be filed no later than **December 11, 2015**;

7. A hearing on the Motion to Dismiss is scheduled for **December 18, 2015 at 11:00 a.m.**;

12

8. All other discovery is **STAYED** until further Order of the court, based on Plaintiff's representation at oral argument that it was not prepared to go forward with merits discovery at this time.

DATED: October 22, 2015                    BY THE COURT:


                                                     s/Nina Y. Wang_____
                                                     United States Magistrate Judge